[S. F. No. 17295. In Bank. June 18, 1946.]

THE PULLMAN COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and ADELINE MIRA, Respondents.

Corbet & Selby, Russel Shearer and Paul Thomas for Petitioner.

Everett A. Corten, Dan Murphy, Jr., and R. C. McKellips for Respondents.

SCHAUER, J.—On February 13, 1942, respondent Mira, a seamstress employed by petitioner Pullman Company, filed her application for workmen's compensation. After a hearing respondent Industrial Accident Commission found that the employe sustained industrial injury on April 20, 1940, that temporary disability resulted on January 22, 1942, and awarded compensation therefor. From time to time, after

further hearings, the award was amended in particulars hereinafter related. On April 10, 1945, the commission made an order which amends previous orders and awards compensation for permanent partial disability. Petitioner seeks annulment of this award. Its main contentions are: (1) The award violates section 5804 of the Labor Code. That section provides, "No award of compensation shall be rescinded, altered, or amended after 245 weeks from the date of the injury." (2) The original application for compensation was not filed within six months from the date of the injury as required by section 5405 of the Labor Code. (3) The award is not supported by any evidence and is contrary to the medical evidence. (4) The award is beyond the power of the commission because it grants compensation for permanent partial disability, whereas the employe alleged, and asked compensation for, new and further temporary total disability. (5) An interim order of the commission that liability for temporary disability be terminated and that the employe "take nothing by reason of her claim of permanent disability, at this time," amounted to a final determination that there was no permanent disability. (6) "Good cause" for amending the prior awards, within the purview of section 5803 of the Labor Code, does not appear. We have concluded that none of petitioner's contentions can be sustained.

The employe's disability is the loss of grasping power of the right hand and disabling pain extending from the middle finger of the hand up the right arm and into the neck, aggravated by any use of the hand and arm. Her condition has been described by the various doctors who examined her from time to time during the lengthy history of this proceeding as "a seamstress' version of 'writer's cramp,'" "occupational neurosis," "bursitis," "myositis," "neuritis," "arthritis," "so-called tennis elbow," etc. The commission found that the injury was "Radial-humeral bursitis, epicondylitis and deltoid myositis." It is apparent from the record as a whole that the original award is based on the theory, ever since adhered to by the commission, that the disability is in the nature of an occupational disease, arising out of the work of sewing heavy carpets since 1929, aggravated by the employe twisting her finger while sewing on April 20, 1940, and culminating in disability in January, 1942, when the employe had to quit work.

Chronologically the history of these proceedings is as follows:

*February 13, 1942.* Employe filed application for compensation alleging that she sustained industrial injury April 20, 1940, by twisting the thimble finger of her right hand while sewing, and that she left work on January 26, 1942.

*May 11, 1942.* Commission found industrial injury sustained April 20, 1940, "from repeated motions of hand and arm while sewing carpets and curtains over a period of years beginning in 1929, . . . caused total temporary disability from and after January 22, 1942, to and including March 20, 1942, and indefinitely thereafter"; claim not barred by statute of limitations; awarded compensation beginning January 30, 1942.

*June through October, 1942.* Employer's petition for rehearing denied by commission; petitions for writ of review and for rehearing denied by District Court of Appeal, First Appellate District, Division Two; petition for hearing denied by this court; all without opinion. In each petition the employer contended that the claim was barred by the six-month statute of limitations.

*November 24, 1942.* Employe petitioned for permanent disability rating.

*February 5, 1943.* Commission amended findings and award of May 11, 1942, "to read as follows: . . ." repeated findings that industrial injury sustained April 20, 1940, caused total temporary disability from January 22, 1942; found temporary partial disability commencing December 1, 1942, and continuing indefinitely; found that employe's "condition has not yet become permanent"; reserved jurisdiction to rate for permanent disability, if any, when condition stabilized, "provided application therefor is filed within 245 weeks from the date of injury"; awarded compensation as indicated.

*March 2, 1943.* Employe returned to work. She was given light work, sorting screws, which she could do with her left hand.

*September 7, 1943.* Employer petitioned for termination of liability.

*September 18, 1943.* Employe petitioned for permanent disability rating. Such petition came on for hearing with employer's petition of September 7.

*November 30, 1943.* Commission made "supplementary findings" that temporary disability terminated March 2, 1943; that "The evidence is insufficient to show that the injury has resulted in permanent disability or that the con-

dition, at the present time, is permanent''; ordered that liability for temporary disability be terminated and that employe ''take nothing by reason of her claim of permanent disability, at this time.''

*January 31, 1944.* Employe petitioned for compensation for ''new and further temporary total disability.''

*February 23, 1945.* After hearing and filing of medical reports, referee notified parties that case would be submitted on recommended rating of 51¼ per cent permanent disability ''unless good cause be shown to the contrary in writing.''

*April 10, 1945.* Commission amended orders of February 5, 1943, and November 30, 1943, ''to read as follows: . . .'' repeated finding that industrial injury was sustained April 20, 1940; fixed permanent disability at 51¼ per cent; awarded compensation therefor commencing January 30, 1942.

*April 30, 1945.* Employer petitioned for rehearing on grounds that commission disregarded medical evidence, that evidence does not support findings, and that claim was barred by statute of limitations.

*May 29, 1945.* Commission denied petition for rehearing.

(While the amendatory orders above referred to were made by a referee there is no suggestion that such orders were not approved or adopted by the commission.)

█ The contentions of petitioner first above stated—that the commission sought to amend its award more than 245 weeks after date of injury and that the original claim was barred—are based on petitioner's view that the commission in 1945 reopened the question of date of injury, determined that its original finding on that question was erroneous, and found that the date of injury was not January, 1942, but April, 1940. The May 11, 1942, finding that the date of injury was January, 1942, is necessarily implied. The express findings are that the employe ''on or about April 20, 1940, . . . sustained injury arising out of and occurring in the course of . . . employment,'' that ''Said injury caused total temporary disability from and after January 22, 1942,'' and that ''The claim herein is not barred by any provision of limitation . . ., the claim having been filed within six months after applicant first suffered disability as a result. of said condition.'' The quoted findings bring the case within the proposition that for purposes of compensation the injury dates from the time when (1) the employe's condition, whether disease or injury, culminates in incapacity for work and (2) the employe knows or

in the exercise of ordinary care should know that he is suffering from occupational disease or industrial injury which is the cause of his disability. (*Marsh* v. *Industrial Acc. Com.* (1933), 217 Cal. 338, 351 [18 P.2d 933], and cases therein digested; *Price* v. *Industrial Acc. Com.* (1935), 9 Cal.App.2d 213 [49 P.2d 294]; *Continental Cas. Co.* v. *Industrial Acc. Com.* (1936), 11 Cal.App.2d 619 [54 P.2d 753]; *Argonaut M. Co.* v. *Industrial Acc. Com.* (1937), 21 Cal.App.2d 492, 497 [70 P.2d 216]; *Travelers Ins. Co.* v. *Industrial Acc. Com.* (1939), 32 Cal.App.2d 643, 645 [90 P.2d 327]; *Williams* v. *Industrial Acc. Com.* (1945), 71 Cal.App.2d 136, 140 [161 P.2d 979].) It was on this proposition that the commission relied in successfully opposing the petitions filed with the District Court of Appeal and this court in 1942.

We cannot agree with the argument that the commission in the exercise of its continuing jurisdiction to change its orders and awards (Lab. Code, §§ 5803-5805) reopened the question of date of injury and, on April 10, 1945, found that the date of injury was April, 1940. The issues at the hearing of the employe's January 31, 1944, ''petition for new and further disability indemnity'' were, as stated by the referee, ''nature, extent and duration of disability and need for further treatment.'' Petitioner waived the question of the reopening of the defense of the statute of limitations by failure to present it to the commission before submission of the cause. (Lab. Code, § 5409.) There is nothing in the record to indicate that the commission or the parties treated the date of injury as in issue when the commission took the evidence on which it based its 1945 order here sought to be annulled. Such evidence is not directed to the question of date of injury; it could not support an amendment of the original findings on that question. The order of April, 1945, states that the orders of February 5, 1942, and November 30, 1943, are amended; it does not state that the findings of the original award are amended. The omission to copy the original findings as to date of disability and statute of limitations does not amount to a determination that those findings were incorrect. They stand unchanged. By reference to them we determine that the commission's award of April 10, 1945, was not foolish, meaningless, and beyond the power of the commission, as petitioner would have us hold, but proper and sustainable. It is true, as petitioner points out, that the referee who heard the evidence appears to have been of the view that the date of

injury was originally found to be April, 1940. But it is the findings of the commission, not the statements of the referee, which must support the award. (Lab. Code, § 5952, subd. (d).) So considered the hearing referee's misapprehension becomes unimportant.

Petitioner contends that there is no evidence of permanent disability and that the commission ignored medical evidence. Six doctors examined the employe after November 30, 1943 (when the commission found the evidence then before it insufficient to show permanent disability "at the present time"). The following excerpts from their reports indicate the conflict of expert opinion: Dr. Roberts: "This woman is still unable to resume her regular occupation due to trauma of her right hand and arm. I have advised . . . physiotherapy and massage . . . to expedite her recovery." Dr. Dickson: "I would have expected the symptoms resulting from her industrial injury to have long ago subsided. From this patient's physical examination, I am unable to account, from an objective standpoint, for the marked weakness in the patient's grip in her right hand. It would appear that she does, unconsciously exaggerate her symptoms." Dr. Fender: "There is little doubt that the patient simulates findings that scarcely can be credited. In spite of this, I feel that she has real disability proceeding from her work . . . I believe the applicant suffers from partial temporary disability. Probably no specific treatment will avail." Dr. Howard: "I would not feel that this [condition of the employe] is connected with her work." Dr. Harbaugh: "[M]y impression is that the complaints are on a functional basis. I believe that settlement or some other form of closure of the case would be to the best interests of all parties concerned." Dr. Fraser: "From the long-standing symptoms which this patient has had, it appears to me that [suggested treatment] . . . should be followed if ultimate recovery is to be obtained." In addition to the medical evidence there is testimony of the employe as to her subjective symptoms. From the employe's testimony and work records of the employer it appears that from October 1, 1943, to the time of hearing even light work (sorting screws with the left hand) caused her such pain that she was absent an average of at least one working day each week. The commission's findings on this conflicting evidence are conclusive. (*Hart* v. *Industrial Acc. Com.* (1931) 119 Cal.

App, 200, 202 [6 P.2d 348]; *County of Los Angeles* v. *Industrial Acc. Com.* (1936), 14 Cal.App.2d 134, 137-138 [57 P.2d 1341] [finding that a disability not apparent to the eye was permanent upheld in absence of medical testimony of permanence]; *Employers' etc. Corp.* v. *Industrial Acc. Com.* (1941), 42 Cal.App.2d 669, 671 [109 P.2d 716] [finding that employe was disabled upheld on the basis of his testimony as to subjective symptoms where medical testimony was only that there had been an injury].)

▮ Other questions now raised by petitioner were not presented by the petition for rehearing filed with the commission and, therefore, were finally waived. (Lab. Code, § 5904; *Pacific Coast Casualty Co.* v. *Pillsbury* (1915), 171 Cal. 52 [151 P. 658]; *Great W. P. Co.* v. *Industrial Acc. Com.* (1925), 196 Cal. 593, 600 [238 P. 662]; *Los Angeles etc. R. R. Co.* v. *Industrial Acc. Com.* (1935), 2 Cal.2d 685, 688 [43 P.2d 282]; *Cowell* v. *Industrial Acc. Com.* (1938), 11 Cal.2d 172, 179 [78 P.2d 1016]; *County of Los Angeles* v. *Industrial Acc. Com.* (1930), 109 Cal.App. 724, 726 [293 P. 820].) In any event, upon the record before us, the award must be upheld on its merits.

▮ The contention that the award is beyond the jurisdiction of the commission because it grants compensation for permanent partial disability instead of compensation for the new temporary total disability which the employe alleged, is without merit. The phrase "new and further disability" was incorrectly used in the employe's petition, which is in substance a supplemental petition seeking amendment of previous awards, not an original claim. But this misnomer did not affect the jurisdiction of the commission nor did it prejudice petitioner. As stated above, at the hearing on the so-called "petition for new and further disability indemnity," the referee announced that the issues included "nature, extent and duration of disability." The evidence of both employe and employer was directed to, and the commission could properly consider, such issues, and was not limited to a consideration of whether the employe suffered the precise disability alleged in her petition. The commission's continuing jurisdiction, once acquired, is independent of any petition filed by a party; on notice and opportunity to be heard the commission could have reopened the proceeding of its own motion and considered the character, duration, and extent of disability. (Lab. Code, § 5803.) After the medical evidence was in, the referee

gave notice to the parties that the case would be submitted on a recommended rating of 51¼ per cent permanent disability "unless good cause be shown to the contrary in writing." Petitioner thus had opportunity to contest the proposed finding of permanent partial disability.

Petitioner next contends that the commission was without power to reopen its determination of November 30, 1943, that temporary disability had terminated and that the evidence then before the commission was insufficient to show permanent disability "at this time." Such determination, petitioner urges, became final without petition by the employe for rehearing and is now res judicata. This contention is, of course, directly contrary to petitioner's position as to the lack of finality of the original finding as to date of injury previously discussed. It is also contrary to the spirit and purpose of the workmen's compensation law and to decided cases. (*Bartlett Hayward Co.* v. *Industrial Acc. Com.* (1928), 203 Cal. 522, 535 [265 P. 195]; *Cowell* v. *Industrial Acc. Com.* (1938), *supra*, 11 Cal.2d 172, 178; *Employers' L. A. Corp.* v. *Industrial Acc. Com.* (1935), 7 Cal.App.2d 190, 193 [45 P.2d 371].) The order of November 30, 1943, contemplated, indeed invited, further proceedings directed to a determination of the existence and permanence of disability because of its wording: "The evidence is insufficient to show . . . that the condition, at the present time, is permanent . . . IT IS ACCORDINGLY ORDERED . . . that applicant take nothing by reason of her claim of permanent disability, at this time." The question of the permanence of disability, unlike the question of date of injury, was thereafter put in issue before the commission. The amendment of the prior orders, the finding that disability continued, and the award of compensation therefor, after notice, opportunity to be heard, and the taking of evidence addressed to the question, is a typical situation contemplated by the provisions of the Labor Code which give the commission continuing jurisdiction.

What has been said disposes in large part of petitioner's contention that no good cause for amending the prior orders was shown. It is settled that "the continuing jurisdiction of the Commission . . . is not limited to the consideration of changes in the physical condition of the workman, but is extended to the right to rescind, alter, or amend the orders, decisions or awards upon good cause appearing therefor. What constitutes 'good cause' depends largely

upon the circumstances of each case. The term is relative. It may be assumed that the determination of the Commission as to what constitutes 'good cause,' while entitled to great weight, would not be conclusive." (*Bartlett Hayward Co.* v. *Industrial Acc. Com.* (1928), *supra,* 203 Cal. 522, 532.) This court has said that "the power of the commission to change its former orders or awards may not be predicated upon a mere change of opinion." (*Merritt-Chapman & Scott Corp.* v. *Industrial Acc. Com.* (1936), 6 Cal.2d 314, 316 [57 P.2d 501].) This statement must be considered in its context; it refers to the power of the commission to change a finding of fact and an award based thereon in the absence of any showing of any relevant circumstance which was not known to the commission when it made the original finding. (See *Young* v. *Industrial Acc. Com.* (1944), 63 Cal.App.2d 286, 289 [146 P.2d 693].) The commission can amend its findings and the award based thereon where there exists some circumstance unknown to the commission at the time it made the original award, which renders such original award inequitable. (*Merritt-Chapman & Scott Corp.* v. *Industrial Acc. Com.* (1936), *supra; Ocean A. & G. Corp.* v. *Industrial Acc. Com.* (1938), 12 Cal.2d 116, 120 [82 P.2d 603] ; *Clendaniel* v. *Industrial Acc. Com.* (1941), 17 Cal.2d 659, 663 [111 P.2d 314] ; *Colonial etc. Ins. Co.* v. *Industrial Acc. Com.* (1941), 47 Cal.App.2d 487, 490 [118 P.2d 361].) There appears here a circumstance which the commission did not and could not know at the time it found, on November 30, 1943, that temporary disability had terminated and that the evidence then before it did not show permanent disability. That circumstance is the showing that even the light work of sorting screws cumulated to cause continuing disability. In the circumstances the commission could properly determine that the showing that the disability which was originally found to be temporary and thereafter was found to have terminated is in fact permanent, constitutes "good cause" for amending its orders.

Since the commission in this proceeding properly exercised its continuing jurisdiction under sections 5803 through 5805 of the Labor Code, contentions of the parties relating to proceedings under section 5410 of the same code to establish "new and further disability," need not be discussed.

For the reasons above stated the award is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Spence, J., concurred.